ALFRED PEATS CO. v. BRADLEY et al.

(Supreme Court, Special Term, New York County. May 26, 1914.)

1. LANDLORD AND TENANT (§ 122*)—LEASE OF STORE IN ONE-STORY BUILDING —ADVERTISING ON ROOF.

In case of a one-story building, containing several stores, with a continuous roof over all, the part of the roof over one. of the stores, designed exclusively for its benefit, is part of the premises demised by a lease of such store with its basement, which in the absence of the covenant the lessee must repair, and on which, in the absence of provision to the contrary, the tenant may advertise his business, so that, he being merely limited by the lease to such signs as the landlord may approve, and the right to use the roof for advertising not being reserved to the landlord, the landlord may not so use it, or permit others to do so.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 435; Dec. Dig. § 122.*]

2. INJUNCTION (§ 48*)—CONTINUING TRESPASS.

The trespass, by erection of advertising signs on the roof of a lessee's store, being continuous, injunction may be had.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 101; Dec. Dig. § 48.*]

Action by the Alfred Peats Company against one Bradley and another. Judgment for plaintiff.

H. B. Gayley, of New York City, for plaintiff.
Frederick L. C. Keating, of New York City, for defendant Bradley.

GREENBAUM, J. This is an action brought to restrain the defendants from erecting on the roof of the premises leased to and occupied by the plaintiff on the southeast corner of Broadway and Seventy-Fifth street, in the borough. of Manhattan, city of New York, a metal structure for advertising purposes, and to compel the removal of the portion thereof already constructed. The plaintiff is one of the tenants of a one-story building designed for business purposes only, running through from Broadway to Amsterdam avenue, on the south side of Seventy-Fifth street, of which the defendant Bradley is the landlord. The defendant Van Beuren & New York Bill Posting Company is the lessee of the defendant Bradley of the entire roof of the building for bill posting purposes. The length of this building on Seventy-Fifth street is about 214 feet, and its width on Broadway and Amsterdam avenue is about 50 feet. The premises demised to the plaintiff occupies about 60 feet on Seventy-Fifth street and the full width of 50 feet on Broadway. The roof covering this entire one-story building is a continuous one, and not divided into sections corresponding to the spaces occupied by the several stores beneath the roof. The lease in question covers a term of 4 years, commencing on the 1st day of February, 1913, and provides for the payment of a yearly rental of $7,500, with an option of renewal for 10 years, subject to a termination of the lease after February 1, 1917, upon payment of $7,500 to the lessee, in the event of a sale of the premises by the landlord or of an improvement thereof. The premises are described in the lease as:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"The store and basement known by the street numbers 2132 and 2134 Broadway, in the borough of Manhattan, city of New York, and situated at the southeast corner of Seventy-Fifth street and Broadway, * * * to be used and occupied as a salesroom and showroom for the Alfred Peats Company in connection with their business as dealers in all kinds of wall papers."

There is no express provision in the lease that the tenant was to make repairs, nor is there any such provision requiring the landlord to make repairs. It is also provided:

"That the tenant shall not expose any sign, advertisement, illumination, or projection in or out of the windows or exterior, or from the side of the building, or upon any place except such as that (sic) he has approved and permitted in writing by the landlord or his authorized agent, * * * and in case the landlord or his representatives shall deem it necessary to remove any such sign in order to paint the building or make any other repairs, alterations, or improvements in or upon any part thereof, they shall have the right to do so, providing they cause the same to be removed and replaced at their own expense whenever the repairs, alterations, and improvements shall have been completed."

It was established upon the trial that at the time the lease was executed to the plaintiff there were certain anchor rods in position in the roof of the premises, placed there for the purpose of the erection of a sign or signs, but that said anchor rods were not visible from the sidewalk; that neither the plaintiff nor any one representing it had examined the roof of the building, or knew of the existence of such anchor rods; and that the plaintiff first became aware of their existence in about November, 1913, when the defendant Van Beuren & New York Bill Posting Company began the erection of the sign structure complained of while the plaintiff was in possession and occupancy of the premises and against its protests. It also appears that the sign structure is composed entirely of metal, and is solidly built upon iron girders and bolted to concrete bases built in the roof, and that the original anchor rods were never used. It also appears that there was no means of reaching the roof through the premises demised to the plaintiff, except by placing a ladder against the outside of the building, and that the method provided by the landlord for reaching the roof was through a hallway erected about midway between Broadway and Amsterdam avenue, which was connected with the roof by means of a stairway. This hallway is separate from and not connected with any of the stores of the building.

[1] It is the contention of the plaintiff that the section of roof over the demised premises is a part thereof and "is as much in the possession of the plaintiff as any other part of the demised premises." The defendants, however, contend that the premises are but a part of a one-story building leased to various tenants, and that the landlord has complete control of the entire roof in the same way as halls and stairways used in common by various tenants of a building. In the absence of an express undertaking to repair, the tenant is obliged to make repairs. The rule is stated in Witty v. Matthews, 52 N. Y. 512, 514, as follows:

"The obligation of a landlord in any case to repair or rebuild demised premises, rests solely on express covenant or undertaking. Without an ex-

press covenant to that effect by the lessor, he is neither bound to repair premises himself nor to pay for repairs made by the tenant. Manford v. Brown, 6 Cur. 475; Arden v. Pullon, 10 M. & W. 321."

The exception to this rule is made in cases of hallways, stairways, and elevators used in common with other tenants (24 Cyc. 1084), and upon the same principle the landlord is required to keep in repair the roof of a building used by different tenants (Alperin v. Earle, 55 Hun, 211, 8 N. Y. Supp. 51), or where it is for the protection of a building having a number of floors occupied by different tenants (Rauth v. Davenport, 60 Hun, 70, 72, 14 N. Y. Supp. 69). But is the exception applicable to the case of a one-story building having one continuous roof, where a definite portion of the roof covers only the premises of a single tenant? The premises leased to plaintiff can be physically and definitely marked off from the rest of the building, and as thus marked off they constitute in effect a separate and independent building. On principle there would seem to be no valid reason for absolving the tenant from the common-law duty to repair that part of the roof which covers the premises demised to him, and which could only have been designed to protect these identical premises from the effects of the elements. The tenant's obligation to repair, in the absence of an express agreement to the contrary, would seem to be applicable to all such portions of a building which exist exclusively for the benefit of the leased premises, and the circumstance that a landlord voluntarily repaired the roof on several occasions creates no obligation to repair where none exists under the lease. Bronner v. Walter, 15 App. Div. 295, 296, 44 N. Y. Supp. 583.

The roof covering the store and basement leased to the plaintiff is exclusively designed for the benefit of the store and basement in question. There is no evidence in the case tending to establish that any of the other tenants enjoy the use of that part of the roof which covers the plaintiff's premises, or that it serves as a protection to any tenant other than the plaintiff. There is thus no state of facts here shown which would bring the tenant within that exceptional class of cases in which he is absolved from the common-law obligation to make repairs. This rule was recognized in Lichtig v. Poundt, 23 Misc. Rep. 632, 52 N. Y. Supp. 136. In that case the landlord leased a portion of his house, consisting of the basement and store floor. To quote from the opinion:

"In the rear of the store, and forming a part of the demised premises, was a one-story extension, about 20 feet in depth. There was no other structure or story above this extension, which was covered over by a roof, in the center of which was a skylight. * * * In the case at bar the roof of the extension existed for no other purpose whatever than as an inclosure of the extension. It formed a part of the extension, and was essential to its existence and use for the purpose for which it was constructed, so that in leasing it the roof in question formed as much a part of the demised premises as the side and end walls which completed the inclosure, all equally contributing to the inclosure which gave existence to the subject-matter of the demise."

That case was approved and followed in Margolius v. Mundberg, 88 N. Y. Supp. 1048.

The question may also be considered from another point of view, irrespective of the duty of the tenant to repair the roof. In Riddle v.. Littlefield, 53 N. H. 503, 509, 16 Am. Rep. 388, where the question of the right of a tenant of a corner store to use the outside walls for advertising purposes was involved, the following cogent reasoning was indulged in by the court:

"If he [lessee] uses the tenement for a store, he would ordinarily be entitled to affix his signs to the outer walls; * * * and he may cover the outer walls with his advertisements of the merchandise which he keeps for sale within, if he does not injure the building, nor obstruct public passage, nor offend the public eye and taste by unseemly exhibitions, or otherwise violate the laws. And if he may thus incumber and cover the exterior walls of his store, clearly his lessor cannot do the same thing at the same time. The occupation by both parties to the lease, for incongruous purposes, is impossible. * * * The lessee who affixes his signs and advertisement upon the wall, or thereupon suspends his wares, does so in order to attract custom, and thereby increase the profit derived from the use of the demised premises. The outer wall is therefore to him a source of legitimate profit."

That case has been cited with approval in Baldwin v. Morgan, 43 Hun, 355, 357, where it appeared that plaintiff as a tenant occupied the first story and basement, which formed the southwesterly corner of Broadway and Twenty-Seventh street. The landlord claimed that the tenant had no right to use the outer walls for advertising purposes. The court held that:

"The wall, as it exists, is certainly a portion of the premises which were demised to the plaintiff, and he succeeded during his term to the use of that wall under his lease, subject only to the right of the landlord to prevent waste."

The court quotes with approval from Wood on Landlord & Tenant, § 581 to the effect that:

"Unless special reservation in certain particulars is made, the tenant succeeds to all the rights of the landlord; that they are annexed to the estate, so far as the possession and enjoyment of the premises are concerned, immediately upon the commencement of his term."

There would seem to be no reason or principle for treating the roof of the building in question which covers the store of the plaintiff any differently than outer walls. The roof is as much a part of the demised premises as the outer walls. The landlord undoubtedly had a right in his lease to limit the tenant in the use of signs, as it here did; but such a limitation did not in itself confer any right upon the landlord to use either the outer walls or any part of the roof for the purpose of advertising others' wares. Indeed, in the case under review the plaintiff, with the consent of the landlord, erected its signs containing the name of the plaintiff and the words "Wall Paper" above the store along the Broadway and Seventy-Fifth street sides and extending above the roof. To permit the landlord to put huge additional signs directly above plaintiff's would enable him to advertise the wares of a business rival of the plaintiff. In the absence of any provision in the lease reserving to the landlord the right to use the roof for advertising purposes, it seems to me that he should be debarred from using any part of the roof covering the demised premises, or from

entering thereon without the consent of the tenant, excepting to repair it, in case it should be assumed that such duty devolved upon him.

[2] Since the trespass of the defendants is a continuing one, the plaintiff is entitled to the injunctive relief which it asks.